We'll hear argument this morning in Case 17-1091, Timbs v. Indiana. Mr. Hoddit? Mr. Chief Justice, and may it please the Court, the freedom from excessive fines applies to the States because it is deeply rooted in our nation's history and traditions and fundamental to our scheme of ordered liberty. The State of Indiana appears not to dispute that straightforward answer to the actual question presented. And for good reason. The freedom from excessive fines easily warrants incorporation, alongside the Eighth Amendment's other protections. This Court has said just that five times over the last 30 years. Without addressing the incorporation question directly, the State asks whether the clause applies to the States the same way that it applies to the federal government. But 50 years of incorporation precedent holds that incorporated Bill of Rights protections apply to the States the exact same way that they apply to the federal government. There is no reason to adopt the so-called two-track approach at this late stage of the incorporation doctrine, especially— That's so of all incorporations. What about the non-unanimous jury in criminal cases? Justice Ginsburg, as the Court recognized in McDonald, the non-unanimous jury in criminal cases is an anomalous decision that results from a one-justice concurrence in the Apodaca case. And there's no reason, as the Court recognized in McDonald, for that to control when there's over 50 years of precedent, beginning in Malloy v. Hogan, Mapp, Aguilar, again in McDonald, rejecting that two-track approach. Adopting the two-track approach at this late stage would only invite further litigation about rights that are already incorporated. When this Court interpreted the Fourth Amendment right to be free from having your cell phone tracked in the Carpenter case, if my friend's argument were correct, we would have to relitigate whether that right applies to the States. Virtually all of the Bill of Rights, with the one exception noted by Justice Ginsburg, has been incorporated on the right-by-right approach used in McDonald, not on the application-by-application approach proposed. There are a few others that have not been incorporated. Isn't that right? Oh, that's true. Absolutely. But that's either because they haven't been addressed by this Court, like in the case of the Third Amendment right against quartering soldiers, or because, as the Court recognized in McDonald, they long predate the era of selective incorporation. So I think it's possible that if the rights at issue in Bombaless and Hurtado were to come before this Court today, the results might be different. But we don't have to get into that history here, because the history on the question presented of whether the excessive fines clause applies to the States is clear. But what is the provision in the Constitution that you rely on? The Section 1 of the Fourteenth Amendment, Your Honor. It's a component of the liberty that's substantively protected by the Fourth Amendment's due process clause. Yes, Your Honor. And we also have an alternative argument under Section 1's privileges or immunities clause. That would leave out noncitizens. Yes. Textually, Justice Ginsburg, that would leave out noncitizens. But, of course, Petitioner is a citizen, and that could be a decision for another day. It's also true that the fundamental and deeply rooted rights that are currently incorporated under the due process clause apply to noncitizens, and they would continue to do so regardless of the Court's reasoning in this case. Well, but you can see there's different arguments about whether, and this, like, gathers the State's primary submission, whether excessive fines are prohibited and whether civil in-rem forfeitures are. And I certainly understand the argument that the disproportion and excessiveness arguments would be quite different with respect to forfeiting the instrumentalities of the crime. I mean, an argument could be made, well, that's always proportionate since it's the way the crime is accomplished. I don't agree, Your Honor, because whatever might be said of historic in-rem forfeiture practices, forfeitures today, like this one, are fines within the meaning of the clause. The Court was unanimous on that point in Austin. And since then, it has reaffirmed that point in the Bajikagian case, in the Hudson case, and most recently in Kokesh, all of which rely on Austin. As a result, State and Federal courts today are. Roberts. Of course, the argument there was not for the purposes we're talking about today in terms of incorporation. And if the test is, as it has been, you know, whether it's essential, fundamental, and all that, you can see a distinction between saying, okay, you're going to be fined $500,000, and saying you're going to — I mean, the action is not against the individual. It's against the asset. And so you will lose assets that you use in crime. The first one sounds, yes, that's pretty excessive. The second one, you can certainly argue, well, that makes a lot of sense. Doubtless, Your Honor, but these questions go to the excessiveness analysis, not to the incorporation analysis that is currently before the Court. When the Court incorporated the Second Amendment right to keep and bear arms in the United States, it had rejected that right for 140 years until the Heller decision, and then just two years later incorporated it against the States. So there's no reason to require, as my friend suggests should be required, that litigants show a historic pattern of the right being enforced. And in any event, as the Court recognized in Austin, in Bajikasian, and most recently in Kokesh, we're dealing with a different animal. It uses the same name, civil in-rim forfeiture, but it's a different animal in that it's not just about personal jurisdiction and pirate ships anymore. It's about every person's property, and every officer on the street now has the power to strip people of their property. Well, your client was convicted of an offense that was punishable by a maximum of 10 years' imprisonment. Am I correct? 20 years' imprisonment. 20 years' imprisonment. And he was sentenced to six, but it was suspended, right? That's correct, Your Honor. He was sentenced to home detention for one year and then five years of probation, the minimum on that scale. So if he had been sentenced to six years of actual imprisonment, would that have been a violation of the Eighth Amendment? Possibly, Your Honor. We would have to look at the proportionality to the gravity of the offense. And for what it's worth, Judge Todd in rural Grant County, Indiana, looked at this offense and the impact on the community and determined that it would be grossly disproportionate to strip Petitioner of his property or even to send him to prison. And I think that's significant, especially given that the Indiana Court of Appeals affirmed that decision, and the Indiana Supreme Court didn't even address it because it didn't have an opportunity to reach the excessiveness question. So what have we said about the application of the grossly disproportionate standard? Well, Your Honor, as you know, the court in Bajikagian articulated that standard for the first time, and it hasn't had an opportunity to address it again since. Well, I mean in the context of imprisonment, not fines. Oh, absolutely, Your Honor. Under the Cruel and Unusual Punishment Clause, the court has articulated a very similar  Is the punishment grossly disproportionate to the gravity of the offense? And there's nothing radical about allowing trial judges at the end of a proceeding to assess under all of the circumstances, as this Court emphasized in Bajikagian they should, even with respect to interim forfeitures. That's something that trial judges do every day. But your assumption is that you assess the particular circumstances of the case. I mean, I suppose if you ask people, do you think six months is an excessive sentence for whatever it was, three counts of dealing in hazardous, illegal drugs, many people might say no. It's only when you say, well, is six months too much for whatever the circumstances were here, the much, I don't want to say insignificant, but lighter quantities involved. What do you look at? The particular circumstances or what the crime is? The crime is not dealing with tiny amounts of drugs. The crime that he's convicted for is much broader than that. Your Honor, excessiveness is, quote, necessarily fact-intensive. That's from the Bajikagian case. Excuse me, Your Honors, that's actually from the Second Circuit's von Hoff case, which attempts to apply Bajikagian to the real-world circumstances of an interim forfeiture. But Blackstone recognized that as well. There's no way to assess the disproportionality to the gravity of the offense in the abstract. By contrast, the incorporation question that's before the Court today is easy to assess in the abstract. We ask ourselves not whether civil interim forfeitures, a right against excessive interim forfeitures is somehow deeply rooted and hence can be incorporated. We ask whether the freedom from excessive fines, which has been recognized since the 13th century, is incorporated. And it's important to recognize that the Indiana Supreme Court's decision in this case did not adopt my friend's suggestion of simply saying that it doesn't apply to interim forfeitures. The citizens of Indiana today don't enjoy protection from excessive fines of any kind. And that's true of the citizens of three other jurisdictions, as we pointed out in our petition for certiorari. If we were to assume for the sake of argument that imprisonment for six years would not be an Eighth Amendment violation for this offense, what would that say about a fine of $42,000? Is it possible that six years' imprisonment is not an Eighth Amendment violation but a fine of $42,000? Is an Eighth Amendment violation? Well, Your Honor, we'd have to know all of the circumstances of the case. And if we're talking about this particular case, I think it's clear that the judge on the ground that was closest to this crime felt that it was grossly disproportionate to the gravity. This is a first-time offender who was caught dealing a small amount of drugs. And the vehicle here was that instrument. But we're talking about a Federal constitutional standard, not whatever sentencing philosophy any one of the thousands of judges in the United States who impose sentences might think is the right sentence for a particular crime and a particular offender. Absolutely, Your Honor. But the question presented here is merely whether a defendant in any case has the right to interpose a defense under the excessive fines clause. We're not asking the Court to articulate a new standard of excessiveness. We're not asking the Court to determine that this forfeiture was or was not excessive. We're merely emphasizing that part of the purpose of the Fourteenth Amendment was to guarantee to all 330 million Americans a right to a defense under the excessive fines clause. Indiana denied Petitioner that defense, and the Court should reverse and remand. Two State courts here struck down this forfeiture, held that it was punitive under Austin, believing that the clause already applies to the States, and believing that this forfeiture would be excessive. The Indiana Supreme Court did not address the excessiveness question. It, quote, declined to find or assume incorporation until this Court, quote, authoritatively holds that the clause applies. Is there any in-rem forfeiture, not this one, which relied on the criminal activity of this defendant, but let's say that the State did away with innocent owner defense so that the forfeiture was against the innocent owner? Would that be punishment? I think under my reading of Austin, it was that only those forfeitures that are punitive count under the clause. So what can a State do to take it out of its punitive nature? Well, it's important to recognize that Austin says that if the forfeiture is at least partly punitive, it comes within the confines of the clause. So a forfeiture So they do away with the innocent donor defense, and the innocent donor comes in and says, this is my property. I didn't commit a crime. They say it's too bad. The property did. I think, Your Honor, it's safe to say that that could be deemed excessive. If we look at the Bennis case, that case is about a co-owner who didn't commit the crime, and the Court held that as a matter of Federal substantive due process, that co-owner did not have an innocent owner defense. But that does not dictate that the co-owner couldn't articulate an excessive fines defense. Indeed, three times. Why? If it's not punitive against him, it's the property that is being charged with having been involved in a crime. I see your question, Your Honor. I think that if someone had done nothing wrong, let us say that someone steals my car as I'm walking into a Target, commits a bank robbery, and the police seize that vehicle quite righteously. I mean, as a practical matter, of course, the police are going to return the vehicle to me. But if the State were to go so far as to institute forfeiture proceedings against that person, as Justice Kennedy recognized in his Austin concurrence, there would be several serious constitutional problems with that. And it may be that in those circumstances, where I'm entirely blameless, that the Court would hold that there is a substantive due process right to reject that forfeiture, or the Court would find it to be grossly disproportionate to the gravity of the nonexistent defense. So I think Bennis can be easily reconciled with this case, particularly when the Justice Stevens' dissent in Bennis, which, with two other Justices, points out that Mrs. Bennis didn't bring an excessive fines defense. Had she done so, at least those three Justices would have been inclined to rule in her favor. So you're saying even if it's a classic in rem forfeiture of a kind that's been known for centuries, that would potentially violate the excessive fines clause? Yes, Your Honor. This Court has rejected the idea that States can work their way around the excessive fines clause based on nothing more than a label. This is not a labeling game. The Court looks to the substance of what's happening. It emphasized that most recently in the Kokesh decision, that, you know, fines, penalties, they sometimes serve several purposes. But with respect to civil in rem forfeitures, if any of those purposes are punitive in nature, then the defense can be raised. And that makes sense. What is the situation with jail, prison? I have a vague recollection. Often such recollections are incorrect. But I have a vague recollection that there was a case in which California's three-strike law was applied to sentence to life a person whose final offense was stealing an $80 golf club. And I think the majority said, no, we're not going to look at that because it's too complicated. Am I right? Does that ring a bell? If that still is the law, which I think it is, it's something anomalous about saying, by the way, if you took his Mercedes, we will look to see whether that's disproportionate to taking a golf club. But if you send him to jail for life, we won't. Now, have I stated this correctly? And if so, how do we deal with it? Well, Your Honor, I think the most relevant authority here is the Harmelin decision in which this Court, similar to the situation you're describing, allowed a person to be sentenced, a person from Michigan to be sentenced to life without the possibility of parole for having 650 grams of, I believe it was cocaine. And the Court reasoned that, look, that amount of cocaine could be broken up and easily used for distribution. So it's appropriate in these circumstances to punish that harshly. Here, we're dealing with two grams. My question really is, are there cases where we have said that the punishment is disproportionate, where it's simply a question of the degree of punishment, i.e., life imprisonment, and the nature of the offense, e.g., stealing a golf club? I'm not sure there are. And if there are not, it seems odd. And I think I'd have to think about it, or maybe we should address in some way your argument as to why there is that difference. Your Honor, I think if we posit that difference, yes. Saying there is a difference. Between sentencing a person for stealing a golf club, a life sentence, I think that, no, there is no difference, and that if there is that tension between the excessive fines clause and the cruel and unusual punishment clause, that in an appropriate case, this Court should resolve it. I thought the three strikes, it wasn't simply stealing a golf club. It was the third offense. So it was a punishment for recidivists. Absolutely, Your Honor, and thank you. He also robbed a chicken coop. This gets me back to the question I was asking before. If six years imprisonment is not a violation of the Eighth Amendment, and you said it might be, I think you might have something of an uphill fight to prove that, three years, two years? How low would the ceiling of permissible term of imprisonment have to go in order to justify a holding that a fine of $42,000 is a violation of the Eighth Amendment? What is the equation between the monetary, between dollars in a fine and time imprisonment? Your Honor, although it might be unsatisfying, the Court has said repeatedly that there is no equation and that there can be no equation, because these situations are inherently real world in nature, and that courts have been directed, specifically with respect to interim forfeitures in the Bajikagian case, to assess all of the circumstances. And as Justice Ginsburg was assisting me, it's absolutely the case that the Court has to look at not just the value of the property, not just the gravity of the offense, but also the offender himself and his effect potentially on the community if he remains at large. There's nothing new about that. Trial judges every day assess in all of the circumstances what is an appropriate punishment, and all we're saying in this case, we're several steps removed from the question presented right now, all we're saying is that you have an excessive fines defense that you may raise. Kagan. So we are several steps removed, but I think that the import of some of these questions is, look, we've made it awfully, awfully hard to assert a disproportionality claim with respect even to imprisonment. And if it's at least equally hard to assert a disproportionality claim with respect to fines, we could incorporate this tomorrow, and it would have no effect on anybody. That's potentially true, Your Honor. But the standard of assessing this type of economic sanction, it's important to recognize is being developed as we speak in the lower courts. This Court's decision in Bajikagian has prompted the lower courts to try to articulate factors, and some courts use some factors, other courts use others. In an appropriate case, with full briefing and a comment from Amiki, this Court can and should decide that important question. But this case merely insists that Petitioner, like every other American, has the right to raise the excessive fines defense and that the Indiana courts can then assess the situation. Well, but you're asking us to, you know, buy a pig and a poke. In other words, you're saying incorporate this, but, you know, we don't even know whether it means we're going to decide whether $10,000 is enough or $20,000, or if we're simply going to say something along the lines of Harmelin, which it's not just that it's whatever so many grams, it's that it's the third offense, and so that's what's the protection against that is fundamental to a civilized society or whatever the standard is that we've been applying. You say don't worry about what it means, just incorporate it and then figure it out later on. Your Honor, I'm not saying don't worry about it. I think that this is a pressing question. And in an appropriate case, I think that the Court does need to take it up. But if we look to the Harmelin decision, Justice Scalia's opinion in that case points out that there's special reason to be concerned when the government uses economic sanctions to punish a person, because unlike all other forms of punishment, whether it be life imprisonment, Justice Alito, or three strikes law, those cost the government money. But these types of forfeitures and fines raise revenue, and there's good reason, there's good history for being concerned about the sovereign power to raise revenue using punishment. Well, let me give you two examples. Suppose your client, instead of using a Land Rover, was it? Yes. A Land Rover had been using a 15-year-old Kia. Or at the other extreme, suppose he used a Bugatti, which costs like a quarter of a million dollars. Would the excessive fine clause apply differently in those three cases? No, Your Honor. It applies the same. The same test. But would the result be different? If he had been driving a car with a book value of $1,500, would the result be different? Well, Your Honor, we would have to know more. We would have to know what the gravity of the offense was. Well, we know. It's the offense we have here. Okay. We know what the offense is. I think in this instance, any forfeiture of the vehicle would be excessive because this vehicle was not instrumental to this crime. It was incidental. It's no surprise that in rural Indiana that a person might drive somewhere to meet with someone, and that doesn't make this vehicle somehow like a pirate ship that had been sailing the high seas. Well, that's contrary to a lot of civil forfeiture law. I mean, this was an instrumentality of the crime. This is how he got to the deal place and how he carried the drugs. Normally, I mean, you're carrying the drugs in your car. I think it's pretty well established. Your car can be forfeited. Potentially, Your Honor. It's well established that the car is subject to forfeiture. It is not, however, well established that that would necessarily not be excessive. But does it make a difference? We've been talking about the value of the item. What if the person doing this, you know, was a multimillionaire? $42,000 doesn't seem excessive to him. And yet if someone is impoverished, it is excessive. Does that matter? Well, Your Honor, if the Court looks to the brief of the Eighth Amendment scholars filed in support of neither party, they discuss this. Magna Carta had the principle of salvo contentimento, the idea that you can't take from a man so much that he would be destitute. And the Court has suggested that in the Bajicagian case that that might be a factor. But it specifically declined in Bajicagian to articulate factors, recognizing that this is highly contextual, highly fact-intensive, and something that ought to be developed in the lower courts before this Court pronounces any particular test. What is the — on the Federal side, how does this work? What kind of forfeitures have been held unconstitutional? Have any? Yes, Your Honor. The Second Circuit's von Hoff decision is helpful. That case dealt with a wife who was unaware that her husband was cultivating marijuana in the family home. And the Second Circuit wrestled with that case, articulated factors for assessing excessiveness, and determined that that wife was entitled to return of a portion of the property. And that's important to recognize, too. This isn't an all-or-nothing thing. It may be that the Bugatti that Justice Alito was talking about would be forfeited in part and not in full, or that a person who is particularly dependent on their vehicle, say they're a mother and it's the minivan that they use to get their children to school, that a trial judge might determine that that is constitutionally excessive. Your Honors, if there are no further questions, I'd like to reserve the balance of my time. Thank you, Counsel. General Fischer. Mr. Chief Justice, and may it please the Court, in rem forfeitures have been a feature of the Anglo-American judicial system for hundreds of years. But until about 25 years ago, no court had held that they were subject to a proportionality limitation, while other constitutional doctrines may limit it. General, before we get to the in rem argument and its application to this case, can we just get one thing off the table? We all agree that the excessive fines clause is incorporated against the states. Whether this particular fine qualifies because it's an in rem forfeiture, another question. But can we at least get the theoretical question off the table, whether you want to do it through the due process clause and look at history and tradition? You know, gosh, excessive fines, guarantees against them go back to Magna Carta  pretty deep history. Or whether one wants to look at privileges and immunities, you might come to the same conclusion. Can we at least agree on that? Well, I have two responses to that. First, with the— Well, I think a yes or a no would probably be a good starting place. Well, I think with respect to in personam, the answer is yes. But you have to take into account, and this is the methodology of McDonald, you have to take into account the history and traditions of the right being claimed. Now, the right being claimed here is a right of proportionality as to in rem forfeitures. The court has to grapple with that history, which is really not seriously contested, that that was never subject to proportionality. But whatever the excessive fine clause guarantees, we can argue again about its scope, in rem and in personam, but whatever it in fact is, it applies against the states, right? Well, again, that depends. Most of these incorporation cases took place in like the 1940s. Right. And here we are in 2018, still litigating incorporation of the Bill of Rights. Really? Come on, General. Well, I think what you have to take into account, though, is the history. And you have to take into account all the history, not just the in personam history, the in rem history. For the clause, why do you have to take into account all of the history, to pick up on Justice Gorsuch's question? Isn't it just too late in the day to argue that any of the Bill of Rights is not incorporated? The court has never incorporated a right against the states where it could not conclude that there was a relationship that was fundamental and deeply rooted in our history and tradition. But aren't all of the Bill of Rights at this point in our conception of what they stand for, the history of each of them incorporated? Well, with fairness, not with respect to your conception on excessive fines. And Austin is what stands in the way of that. Austin has been undermined by subsequent cases, including Ursary, including Baja Khajian, which by the way was in a footnote with seeming approval. Well, that's one thing that's interesting about that footnote, is that it's as weak an endorsement as I think we can imagine. It said that Austin was justified by reference to some difference between common law forfeitures and so-called modern forfeitures. Well, Austin didn't depend on that distinction, and that distinction does not exist. The so-called modern day forfeitures are materially the same with respect to the conceptual nature of them, that they are against the property and not the person, with respect to the procedural nature, which is civil and not criminal. If I understood your response to Justice Gorsuch, it was essentially that we can't answer the question wholesale, that we have to look at the particular right being invoked. So I guess the question is, do you have a theory about how we go about dividing up rights? You know, how do we decide that we're looking at a particular right against in-room forfeitures as opposed to a general right against excessive fines? Well, I think McDonald gives us some instruction on that. McDonald talked about not simply the Second Amendment, but about the right to self-defense in the home. Other cases of incorporation this Court has decided have approached, for example, reasonableness under the Fourth Amendment as distinguished from, you know, the exclusionary rule. There are precedents that do that, but there is no precedent where the Court has incorporated a right that was not deeply rooted or fundamental. I mean, that seems to make the incorporation question sort of indistinguishable from the substantive question. I think you have to come to grips with the history, whether you call it incorporation or you call it the substantive merits question. We've given you three different ways to do this. The most historically sound way is to overrule Austin. You don't want to do that. Counsel, you know, if — just to pause on that for a second, you know, the Indiana Supreme Court didn't address the merits questions, didn't address any of this forfeiture and rem impersonum, just said that the excessive fines clause is not incorporated, period. Why isn't that just wrong? And then you can go make these arguments about why it doesn't apply to this case on remand. Do you really want us to answer the merits questions, too? Well, the problem with relying on lower court percolation on the merits question, in terms of whether Austin is correct, is that Austin binds the lower courts. They don't have an opportunity to revisit that. This Court does. The matter has been — Okay. Let's say this Court is not inclined to revisit Austin. You're going to lose not just the incorporation question, but the merits question, too. Could these work? Well, I'm not sure what you mean by the merits question in that regard. With respect to whether this forfeiture is excessive, certainly that discussion and that argument would take place back in the Indiana Supreme Court. With respect to the meaning of Austin, whether Austin remains good, I think that's only something this Court can affect. And I think with respect to the broader question, even if the question, Justice Kagan, is the excessive fines clause as a whole and not something where we're going to slice and dice the rights, we still have to take into account that history of in rem forfeiture. And we don't have any examples of incorporation where there is this substantial history that calls into question the fundamental or deeply rooted nature of a very large, you know, area where that right would be applied. But we do have a relatively recent history calling into question the division between in rem and in persona, certainly in the area of personal jurisdiction. It was once quasi-in rem jurisdiction and personal jurisdiction. And yet in Schaffer v. Heitner, the Court said, we're not going to do that anymore. Due process controls both. So whether you label it in rem or in persona, let's remember that it's things don't have rights or obligations in and of themselves. It's people that have rights or obligations with respect to things. Well, with respect to Schaffer, I think what's critical there is the word in rem proceeding. We're talking about the ability to seize assets for a case where there had been an in persona judgment. And that distinguishes that category of cases from the historical in rem forfeitures we're talking about. In rem is still critical for jurisdictional reasons, for it comes up in sovereign immunity. It binds the states there that we can't assert sovereign immunity the same way when we've got an in rem proceeding. You've got other situations. Double jeopardy. We already have a distinction in the double jeopardy context where in rem is critical. So I don't think we can just wave it away. What is the difference between the approach that you're advocating here and the way the Court used to address the question whether rights protected by the Bill of Rights apply to the states before it began the process of incorporating provisions of the Bill of Rights one by one, and it said that what applied to the states were those rights that were implicit in the concept of ordered liberty. So there was a two-tiered system. And that seems to be what you're asking us to go back to with respect to the excessive fines clause. Is there a difference? I don't — could you explain what is the difference between those two approaches? Yes, indeed. We're not suggesting some sort of systematic differential treatment. In McDonald, the Court acknowledged that the differences that exist between the Bill of Rights rights that apply to the Federal Government and the states are as a matter of stereodicysis. Now, here, what we're saying is if that — if the — in the analysis, because of the lack of historical roots of the in rem proportionality right, there ends up being a difference. That has to be based on the stereodicysis of Austin. If Austin remains good law only because of stereodicysis, that puts it in the same category as those other cases. It's not a systematic federalism discount, if you will, on the right. But if Austin were overruled, then the rule as applicable to the Federal Government would change as well. That's right. That's right. We would be on the same — So I'm still not seeing the difference between those. Well, the difference would be, if you look at Austin, if you were to look at Austin and say, you know what, Austin was dead right, historically — this is historically rooted and it is fundamental, then I don't think there's any grounds for us to say that there should be — that the outcome should be any different between the states and the Federal Government. If you look at Austin and you say, you know what, that's questionable, but we don't want to overturn it because stereodicysis principles counsel against that. That's a — that's a different analysis, and that's more like Hurtado, more like Bombolas. Well, isn't that pretty much what the dissent in McDonald's said? We don't like Heller, but at least let's just keep it applicable to the District of Columbia and the Federal Government and not apply it to the states. Well, but I think that was a different — for a different reason, in that the plurality acknowledged the distinction with Bombolas and Hurtado being purely a matter of stereodicysis, and that's the basic principle work we're calling on here, which is, if Austin remains good law only because of stereodicysis, that doesn't make this a systematic sort of discounted right. That just means that, you know, you've got, as a question of the Court's history, some other way you have to look at the situation. But I think it's critical to understand also that the idea that somehow so-called modern in-rem forfeitures are different from history because of the existence of innocent owner exceptions is also not correct. Innocent owner exceptions did exist within, you know, the last couple of hundred years. Indeed, authorities contemporaneous with the ratification — or roughly contemporaneous with the ratification of the Fourteenth Amendment acknowledged that there might be innocent owner defenses. The treatise by Bishop says if the law in its clemency permits an innocent owner to make a claim, that does not convert into punishment that which was not already punishment. It doesn't make any difference. So whether we — no matter how we look at in-rem forfeitures today and the features that they exhibit, they're no different than the historical in-rem forfeitures that this Court has said in cases after Austin, calling Austin into question, that they were not punishment. In your view, an in-rem civil forfeiture is not an excessive fine. Is that right? Yes, that is — that is true. So what is to happen if a state needing revenue says anyone who speeds has to or a special Ferrari or even jalopy? There — no, that — there is no — there is no excessive fines issue there. What I will say, and what I think is important to remember, is that there is a constitutional limit, which is the proof of instrumentality, the need to prove nexus. Yes, that isn't a problem because it was the Bugatti in which he was speeding. Right. So there is all the nexus.  I just wonder, what is it? What is it? Is that just permissible under the Constitution? To forfeit the Bugatti for speeding? Yeah. And by the way, it was only five miles an hour. Yeah. Above the speed limit. Well, you know, the answer is yes, and I would call your attention to the — Yes. Yes, it's forfeitable. It is forfeitable. Yeah. The Louisa Barber case. One person over the passenger limit, and the entire ship is forfeit. This is — history shows us in-rim forfeitors — So if the airplane is speeding — Well, in-rim forfeitors have always been with us, and they have always been harsh. General, yeah, that is true. But that's because at a certain — up to a certain point in our history, we didn't apply the Bill of Rights to the states. So in all of the situations before we applied the Bill of Rights to states, they did things that under incorporation were unconstitutional. And in most of our cases, they were history going both ways. Some states did, some states didn't. So really what the issue that we have to look at isn't — is where has our understanding come to in terms of a particular Bill of Rights? And in Austin, we said it is a long part of history that punitive sanctions cannot be excessive. And Justice Scalia said it very well. But for the Eighth Amendment to limit cash fines while permitting limitless in-kind assessments would make little sense altering only the form of the star chamber abuses. So at a certain point in Austin, we looked at what had happened to in-rim forfeiture and realized that we had just changed the star chamber form. I don't actually understand your argument based on history because without incorporation, the history is going to be what you want it to be. The real question is the fundamental right. Are we trying to avoid a society that's like the star chamber? And if we look at these forfeitures that are occurring today, and that's what Austin documented, many of them seem grossly disproportionate to the crimes being charged. So how do you deal with that? How do we avoid a star chamber return? Well, the history that's relevant is not simply the history of what states were doing. It's also the history of what the federal government was doing. And there was no suggestion that before the Civil Rights Amendments were passed that the federal government, in all of its harsh in-rim forfeitures, was somehow violating the Excessive Fines Clause. There was no proportionality limit there. Now, I think with respect to understanding how we view today's forfeitures, you can't distinguish what's happening now from history when historically an innocent owner was not entitled to a defense. How would we ever say, and I think Justice Scalia makes this point, how would we ever say that a forfeiture as to an innocent owner was proportional because the owner is innocent? So that has never been part of the equation. Well, the part that's different about modern forfeitures, and I think this is what Justice Sotomayor is getting at, is that many of them are punitive to the person, and that that was not part of in-rim forfeitures at common law. We're dealing with a world in which it's different in kind, not just degree, not just in number, but in kind. And that's what Justice Scalia, that's what everybody in Austin agreed on. That much was unanimous. And I guess I'm asking you, given the concession by the state before the Indiana Supreme Court that the forfeiture here was punitive, if we don't overrule Austin, and you want us to apply not just the question of incorporation, but go to the merits, don't you lose? No, I don't think we lose because I don't think – the question of punitive and remedial is something that Austin borrowed from Halper. That test has been overruled as to double jeopardy. Now, if it remains the test with respect to something that, whether it's encompassed within the excessive fines clause, there still has to be the analysis. I mean, we have to figure out what disproportionate means. But you conceded that it's punitive. Now it becomes a question of proportionality. But I don't think you can take these on a case-by-case basis. I think you have to say what is the right being claimed. It's not whether this particular forfeiture was punitive or not. It's a question of whether in-rem forfeitures are of the sort that are swept within the excessive fines clause. And historically – The statute here says it's punitive, and you conceded that the statute's punitive. So I'm still stuck on how do you get out of that box? Well, I suppose if that's – if it's the magic word punitive, we could just change the statute. But I don't think that would be a very satisfactory result. I think what the Court is probably looking for is some better way to describe what is included within the excessive fines clause, something more substantive than that. And the cases after Austin all make clear that this distinction between punitive and remedial simply falls apart. You know, the idea of deterrence in Austin, the thought was if it's deterrent, that makes it punishment. Well, the Court's now rejected that in Hudson and in other cases, and in Bajikajian. So that part of the test doesn't hold up anymore either. So I think you have to go back and look at this entire – you know, whether – you have to look very critically at the idea that there's something different about modern-day forfeitures. There really is no distinction, no material distinction, between them and what was happening at common law and certainly what was happening in the middle of the 19th century. So I think the other critical thing to bear in mind here is that if we get into the idea that we're somehow going to apply a grossly disproportionate test, akin to the way it comes up in the in personam cases, effectively you're going to be wiping away centuries of precedent, not just Bennis, but other innocent owner cases. Van Oster, the little Charles, the Malik Adele, all these cases that say that an innocent owner has no constitutional defense. And if it somehow has to come down to the relationship between the guilt of the owner and the crime, then those precedents, I think, simply cannot stand any longer. So I think you're in this situation where you're confronted with which source of doctrine are we going to override. Well, are we going to be wiping all that away or just leaving that for another day? I mean, I guess this gets back to Justice Gorsuch's first question. I mean, the question presented is does the excessive fines clause, you know, is it incorporated in the Eighth Amendment? And I guess your argument seems to be this isn't an excessive fine. In fact, it isn't a fine at all. Well, we can deal with that later, right? Well, first of all, of course, it's in front of you now, so why not? It's been briefed. And the lower courts can't come to any opposite conclusion, so it's not going to percolate. But the second point is that even if we were to say we're not going to revisit Austin, the history of the right is still critical, and McDonald tells us that. And it has to inform the question of incorporation. And the Court has never incorporated where there's that kind of history that is foursquare against the right that's being claimed. And I think that that is going to have to inform the way it is. Well, you just want us to make sure that in our opinion that we say if we're ruling against you that the excessive fines are incorporated under our incorporation doctrine and not say civil in-rem forfeitures are incorporated. Well, but if that's all the Court says, unfortunately the lower courts are going to then read Austin and say, well, you're civil in-rem, and so that's part of excessive fines. And when are we ever going to have a court that's going to create any kind of dispute on that point? Just so I'm clear, you're asking us to overrule Austin. I think that's the most historic point. Because that's the only way that you can win with a straight face. No, not with a straight face. Look, I think that's the most historically sound thing to do. But I don't think that if you're unwilling to do that, that cannot be the end of the analysis on incorporation. Because again, you have to take into account under your precedence the history of the right being claimed. Not just some of the history, not just the in-personam history, but also the in-rem history. And there's no... But again, it just seems as though there are two questions. And one question is incorporating the right, and the other question is the scope of the right to be incorporated. And really what you're arguing is about the scope of the right. And we can incorporate the right without saying a word about the scope of the right. Now, as you say, Austin says something about the scope of the right, and that's a problem for you. But you're really asking us to talk about the scope of the right, aren't you? Well, certainly that's what we think is the most historically sound thing to do. But even if you assume that away, and we're just looking at whether we're going to incorporate the right, the test for incorporation is historically rooted or fundamental to ordered liberty. And to answer that question, you have to look at the history of the right. If the right includes... Well, that's why I asked at the beginning, what's your theory for how you define the right and which history you look to? Because you're really suggesting that we don't take the right wholesale, we try to chop it up. And I guess there are always going to be questions about the scope of the right to be incorporated. And so far we have not addressed those questions when we've decided whether to flip the switch of incorporation or not. We've understood those questions to be distinct and to be questions for another day. And why is it that you're saying we should not use that pretty standard practice and instead start chopping up the right at the incorporation stage? We think that's one way to do it. But we don't think that's the only way. And if indeed the Court doesn't want to chop up the right and it wants to just look at the excessive fines clause, it has to look at all the history, and that includes the history of in rem. And our view is that history means that you can't incorporate. If the history is only in personam, then I don't think there's any serious question about incorporation. But if the history includes the in rem history, the much larger history, the largely uncontested history, then there is no precedent for incorporating in that circumstance whereas there is that amount of history standing foursquare against a substantial number of applications of the right. There just isn't anything to look to on that. You cited McDonald as an example earlier of a case where the Court had, in your view, chopped up the right as incorporated. Are you saying the Second Amendment has a different scope after McDonald? Oh, no, no, no. What I'm saying is that the methodology of McDonald when doing the incorporation analysis was to ask what's the right being claimed. And the right being claimed was the right to have guns in the home for self-defense. And we think that's instructive as to how you look at the right. But you agree, post-McDonald, and this is similar, I think, to what Justice Kagan is asking, that the right is the same as against the states and the federal government. Oh, yes. Oh, yes. But, again, we're not dealing there with the same stare decisis issue that we are grappling with with respect to Austin, which I think puts this in more like an Hurtado and Bamboulas category. We're not asking for, again, we're not asking for a federalism discount. What we're asking for is some ability to take cognizance of stare decisis without sacrificing the necessary historical analysis. Well, at the time of McDonald and at the present time, the Court has held that the Second Amendment right protects the right to have certain firearms in the home for self-defense. It hasn't gone further. But if this Court were to go further, let's say in another case involving the District of Columbia and said that the right included something more than that, would we have to go through another round of incorporation inquiry to determine whether this broader right applies to the state or would it follow automatically under McDonald that it applies to the state? Well, I think particularly given the methodology the Court would use in coming to grips with what that new right is, it would likely just follow. I don't see there would be any need for because it would be essentially the same analysis anyway. But I think the idea here that you can simply look at one part of the history without looking at all of it, I don't think that you can look to McDonald or any of the other precedents and have guidance for that. You can't just ignore it. You have to do something with it. You have to take it into account. And whether that means chopping it up or grappling with the right as a whole and saying that that history counsels against incorporation or simply overruling Austin, that's one of these ways has to take into account the in-rem history. So that's, I think, we offer those three suggestions and we think historically the most historically sound thing to do is to overrule Austin. So I think we've got also grounds for saying that Austin is, I think, fits within the Court's precedents on when to overrule cases notwithstanding stare decisis. In Hudson, this Court has already said that the test that Austin applies that comes out of Halper is unworkable. It has gone through the history in Bajikashian and largely shown that Austin was wrongly decided. There isn't any serious reliance interest, I think, that would mean that there was going to be some sort of disruption if Austin were overruled. So the normal factors the Court takes into account with respect to its precedents, I think, are not barriers here to overruling Austin. And the other thing, I think, you almost can't get away from the prospect of at least implicitly overruling precedents no matter what you do here. If it's not going to be Austin, then it's going to be the innocent owner cases, Bennis, Van Oster, all those precedents.  to the dissent in Bennis, acknowledging that if you're going to incorporate a grossly disproportionate analysis, then really what you've got to do is start getting away from the lack of a required innocent owner exception, that that's going to become something that is going to have to be part of that analysis. Now, Justice Scalia, I do want to call your attention to, in Austin, his concurrence was grappling with this idea as can we do something that's grossly disproportionate in REM the way we would do it in personam. And his concern was, you know what, maybe really what it comes down to is simply this idea of nexus. And the nexus test that he was describing there is essentially what we're describing that would be the proper test under due process. Is there a connection between the property and the offense? And we think that belongs in due process. But Justice Scalia, I think, was on to something there when he was acknowledging that there really has to be a different treatment. Given all that history, given all those precedents of the Court, there has to be a differential treatment. And at the end of the day, I think what you've got to do here when you're looking at this incorporation question is not simply be, I think, cavalier about the idea that this is easy to incorporate. You don't want to do that, I think, without taking a very careful look at what is the right that you're actually incorporating. And does it fit with the doctrines and the history of the Court and all the ways that it's handled incorporation before? And if there's nothing else, I'll see if we're in my time. Thank you. Thank you, General. Mr. Hoddit, four minutes. Your Honors, this case is about constitutional housekeeping. Five times over the last 30 years, this Court has remarked that the freedom from excessive economic sanctions should be understood to apply to the states. In Hall, in Kennedy, in Roper, in Cooper Industries, and in Booth, all that remains to do is to expressly so hold. My friend's approach, by contrast, is radical. He asked the Court to overrule Austin, a unanimous decision that has been on the books for 25 years, that was reaffirmed in Hudson, in Bajikagian, and again in Kokesh. And that case looked at the same history that my friend urges this Court to review here. It would allow, if the Court were to overrule Austin, governments at all levels to impose constitutionally excessive civil in-rim forfeitures based on nothing more than a label. This is not a labeling game. It would also revive the so-called two-track approach that this Court has rejected now for more than 50 years. So even if we imagine that the Court would take such a radical approach, it would break with, for example, the commercial speech doctrine, which there was a long history of commercial speech activity in this country before the 1970s decision, in which this Court held that there is a commercial speech right, and did so in a case against the state without even pausing on the incorporation question. So even if some forfeitures are non-punitive, other forfeitures are punitive. And the forfeiture in this case clearly meets Austin's test that it be at least partly punitive. If the Court looks to Indiana Code 3424.14a, it shows that this statute is more punitive than the statute at issue in Austin, because it required the State, in its case in chief, to prove that petitioner knew about or should have known about the crime at issue here. And that is not true under 21 U.S.C. 881, the statute at issue in Austin. Both statutes have innocent owner defenses. So if anything, this is more punitive, not less, if the Court has no further questions. Thank you, Your Honor. Thank you, Counsel. The case is submitted.